IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:23-CV-00778-FDW-SCR

| | |
|---|---|
| BARBARA ANNE ANDERSON,<br><br>Plaintiffs,<br><br>v.<br><br>CHARTER COMMUNICATIONS INC.,<br><br>Defendants. | ORDER |

**THIS MATTER** is before the Court on Defendant's "Motion to Compel Arbitration/Motion to Dismiss" (Doc. No. 5), as well as the parties' briefs and exhibits. (Doc. Nos. 5, 5-1, 5-2, 9, 10, 11, 14).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and the Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record and the applicable authority, Defendant's Motion to Compel Arbitration is granted, and this action is stayed pending arbitration. Defendant's Motion to Dismiss is administratively denied as moot.

I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this lawsuit against Defendant for violations of the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d), the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq. (Compl., Doc. No. 1). Defendant employed Plaintiff from January 2021 until March 1, 2023, when Plaintiff was discharged from her position. Id. ¶¶ 5, 8.

Specifically, pro se Plaintiff alleges that Defendant "willfully and knowingly wrongfully terminated the [P]laintiff, knowingly and wrongfully engaged in wage theft, wrongfully and knowingly discriminated against a protected class (60[-]year-old woman) . . . and knowingly and willfully participated in wage disparity over 18 months." Id. ¶ III. Plaintiff seeks to recover $2,000,000 in damages in addition to punitive damages and attorney's fees. Id. ¶ IV.

Defendant filed a "Motion to Compel Arbitration/Motion to Dismiss" and requests that the Court compel this matter to arbitration subject to the Mutual Arbitration Agreement[1] ("Arbitration Agreement"), which states:

> You and Charter mutually agree that, as a condition of Charter considering your application for employment and/or your employment with Charter, any dispute arising out of or relating to your pre-employment application and/or employment with Charter or the termination of that relationship, except as specifically excluded below, must be resolved through binding arbitration by a private and neutral arbitrator, to be jointly chosen by you and Charter.

(Doc. No. 5-2, Ex. B ¶ A).

## II. DISCUSSION

### A. Standard of Review

The Federal Arbitration Act ("FAA") provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. The FAA requires courts to stay proceedings and compel arbitration in the event of a refusal to comply with a valid agreement to arbitrate. 9 U.S.C. § 3; Smith v. Spizzirri, 144 S. Ct. 1173, 1173 (2024). The Supreme Court has described the FAA as "a liberal federal policy favoring arbitration." AT&T Mobility, LLC v. Concepcion, 563 U.S. 333, 339 (2011) (citation omitted). "[C]ourts must rigorously enforce arbitration agreements

---

[1] As the Fourth Circuit has recognized, "courts may examine evidence outside the pleadings—including . . . the contract containing the applicable arbitration clause" in considering a Rule 12 motion. Amos v. Amazon Logistics, Inc., 74 F.4th 591, 593 n.2 (4th Cir. 2023).

according to their terms." Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 233 (2013) (internal quotations omitted). When reviewing a motion to compel arbitration, courts construe the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Forshaw Indus., Inc. v. Insurco, Ltd., 2 F. Supp. 3d 772, 785 (W.D.N.C. 2014). "The burden is on the defendant to establish the existence of a binding contract to arbitrate the dispute." Hodge v. Toyota Motor Credit Corp., No. 1:22-CV-00001-MR-WCM, 2022 WL 2195022, at *2 (W.D.N.C. June 17, 2022) (quoting Rowland v. Sandy Morris Fin. & Estate Planning Servs. LLC, 993 F.3d 253, 258 (4th Cir. 2021)).

   B. **Defendant's Motion to Compel Arbitration**

Defendant seeks to compel arbitration of Plaintiff's claims based on a binding Arbitration Agreement. The Arbitration Agreement expressly provides that it is "governed by the Federal Arbitration Act." (Doc. No. 5-2, Ex. B ¶ R). A party seeking to compel claims to arbitration under the FAA must establish that: "(1) a dispute exists between the parties; (2) the dispute falls within the scope of a written, valid agreement that includes an arbitration provision; (3) the parties' agreement relates to interstate or foreign commerce; and (4) the opposing party has failed or refused to arbitrate the dispute at hand." Amos v. Amazon Logistics, Inc., 74 F.4th 591, 595 (4th Cir. 2023) (citing Adkins v. Lab Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 1971)).

Here, a dispute exists between the parties, the Agreement relates to interstate or foreign commerce, and Plaintiff has refused to arbitrate the dispute to date. The remaining issue is whether there is a written, valid agreement that includes an arbitration provision. In this respect, the Court must determine whether a valid, binding arbitration agreement exists between the parties and whether the dispute falls within the scope of the arbitration agreement. See Hightower v. GMRI, Inc., 272 F.3d 239, 242 (4th Cir. 2001) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S.

938, 944 (1995)).

**1. Validity of the Agreement**

The validity of an arbitration agreement is determined by the application of state law principles governing formation of contracts. See First Options of Chicago, Inc., 514 U.S. at 944; Rogers v. Tug Hill Operating, LLC, 76 F.4th 279, 285 (4th Cir. 2023). Under North Carolina law, "[t]he essential elements of a valid, enforceable contract are offer, acceptance, and consideration." Lewis v. Lester, 760 S.E.2d 91, 93 (N.C. Ct. App. 2014) (citing Copy Products, Inc. v. Randolph, 303 S.E.2d 87, 88 (N.C. Ct. App. 1983)).

As the party seeking arbitration, Defendant has met its burden of demonstrating that a valid agreement to arbitrate exists. Defendant submits a sworn Affidavit of an authorized corporate representative to support its position that Plaintiff is bound by the Arbitration Agreement. (Doc. No. 5-2 at 1, ¶ 2). Defendant states that all applicants for a position with Defendant are required to agree to be bound by the Arbitration Agreement in order to submit their application. Id. at 2, ¶ 9. The sworn affidavit also contains the following statement:

> Charter maintains a database of Applicants who have agreed to participate in the [Arbitration] Program. I have access to this database and I have confirmed that Barbara Anderson agreed to participate in the Program while completing an application to Charter and submitted that application through BrassRing on November 10, 2020. A true and accurate copy of Barbara Anderson's application, which demonstrates that she agreed to participate in the Program, is attached as Exhibit D.

(Doc. No. 5-2 at 3, ¶ 14). Defendant also attaches as an exhibit a screenshot of a part of the online application where applicants are provided with a copy of the Arbitration Agreement and required to click "I agree" in order to submit their application. (Doc. No. 5-2, Ex. A).

From a review of the sworn Affidavit and the attached Exhibits, Plaintiff electronically agreed to the Arbitration Agreement on November 10, 2020, and later reacknowledged the Arbitration Agreement during her onboarding process. Id. ¶¶ 14, 19. Plaintiff does not dispute

having signed the Arbitration Agreement. Rather, Plaintiff asserts that it "lacks mutuality" and that the Arbitration Agreement is unenforceable because it is both procedurally and substantively unconscionable. (Doc. No. 9 at 1, ¶ 2; Doc. No. 14 at 2, ¶ 5).

"A court may invalidate an arbitration agreement based on defenses applicable to contracts generally, including unconscionability." See Pitt v. Wells Fargo Bank, N.A., No. 3:21-cv-3428-JFA-TER, 2022 WL 2068851, at *3 (D.S.C. Apr. 1, 2022) (citing Kindred Nursing Ctrs. Ltd. v. P'ship v. Clark, 581 U.S. 246, 251 (2017)). "A party asserting that a contract is unconscionable must prove both procedural and substantive unconscionability." Musselwhite v. Cheshire, 831 S.E.2d 367, 377 (N.C. App. 2019) (citations omitted). "Procedural unconscionability involves bargaining naughtiness in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power." Id. "Substantive unconscionability, on the other hand, refers to harsh, one-sided, and oppressive contract terms." Id.

Plaintiff argues that the Arbitration Agreement is procedurally unconscionable because "it is a contract of adhesion as it is a mandatory condition of employment." (Doc. No. 9 at 1, ¶ 2). But as Defendant notes, a party conditioning its willingness to enter into a contractual agreement on the other party's agreement to arbitrate disputes is not in itself procedurally unconscionable. (Doc. No. 11 at 3); see Lacey v. EMC Mortgage Corp., No. 5:10-cv00173-RLV-DSC, 2011 WL 1337424, at *5 (W.D.N.C. Apr. 7, 2011) ("[P]rocedural unconscionability does not automatically arise when one party conditions its dealings with another party on the execution of an arbitration agreement."); Mahmoud v. Carmax Auto Superstores, Inc., 3:10CV421, 2011 WL 32518, at *2 (W.D.N.C. 2011) (finding an arbitration agreement was not unconscionable when plaintiff was required to agree to it as a condition of applying for employment).

Plaintiff further argues that the Arbitration Agreement is substantively unconscionable

"because it shortens the statute of limitations on claims, fails to restrict attorney fee recovery to only bad faith claims and impermissibly provides for an interim fee award for a party successfully compelling arbitration." (Doc. No. 9 at ¶ 2). Plaintiff goes on to point to the dispute resolution program's discovery guidelines and the types of claims excluded from arbitration as further evidence of substantive unconscionability. (Doc. No. 14 ¶¶ 7, 9, 14). These arguments come directly from Ramirez v. Charter Commc'ns, a California Court of Appeal case involving the same Defendant and Arbitration Agreement and finding that the Arbitration Agreement was unenforceable. 290 Cal. Rptr. 3d 429 (Cal. Ct. App. 2022); (Doc. No. 14). In fact, much of Plaintiff's Reply is made up of lengthy quotes directly from that case. (Doc. No. ¶¶ 7, 15, 20). However, as a California state court case, Ramirez does not bind the Court here, and the arguments made therein are unconvincing as they do not relate to North Carolina law.

Furthermore, the Court notes that multiple federal courts have compelled arbitration under the same or similar arbitration agreement. See Gezu v. Charter Commc'ns, Inc., 17 F.4th 547 (5th Cir. 2021) (compelling arbitration of discrimination claims); Gonzales v. Charter Commc'ns, Inc., 497 F. Supp. 3d 844, 853-54 (C.D. Cal. 2020) (rejecting many of the unconscionability arguments made here); Hughes v. Charter Commc'ns, Inc., No. 3:19-cv-01703-SAL, 2020 WL 1025687 (D.S.C. Mar. 2, 2020) (compelling arbitration of sexual harassment and retaliation claims); Torre v. Charter Commc'ns, Inc., No. 19-CV-5708 (JMF), 2020 WL 1048933 (S.D.N.Y. Mar. 4, 2020) (compelling arbitration of discrimination and retaliation claims).

The Arbitration Agreement is not rendered substantively unconscionable by its time limits provision. Parties may agree to limit the statute of limitations on claims, "so long as the limitations period is not unreasonably short." In re Cotton Yarn Antitrust Litig., 505 F.3d 274, 287 (4th Cir. 2011) (holding that an arbitration agreement was reasonable when it shortened the statute of

limitations). In this case, the Arbitration Agreement defers directly to the applicable statute of limitations in establishing its own terms of limitation, stating "[t]he aggrieved party must give written notice of the claim . . . within the time limit established by the applicable statute of limitations for each legal claim being asserted." (Doc. No. 5-2, Ex. B at 10, ¶ E). As a result, the Arbitration Agreement does not unreasonably shorten any applicable statute of limitations.

The Arbitration Agreement also is not rendered substantively unconscionable by failing to "restrict attorney fee recovery to only bad faith claims" or by its exclusion of certain claims. (Doc. No. 9 at 1, ¶ 2 & 5, ¶ 14). See Gonzalez, 497 F. Supp. 3d at 853-54 (finding this same provision in this same agreement was not substantively unconscionable).

Plaintiff also contends that the Arbitration Agreement is substantively unconscionable because it "impermissibly provides for an interim fee award for a party successfully compelling arbitration causing undue duress on the weaker party." (Doc. No. 9 at 1-2, ¶ 2). This argument fails. While Plaintiff is proceeding in forma pauperis, there is nothing to suggest that the arbitration itself would be prohibitively expensive as compared with litigation.

Plaintiff also argues that the Arbitration Agreement is substantively unconscionable by its unreasonable discovery guidelines. Plaintiff specifically points to the program guidelines' limitation on number of depositions (4) and days to complete discovery (90) as evidence of substantive unconscionability. (Doc. Nos. 14 at 2, ¶ 7 & 4, ¶ 9; 5-2, Ex. B at 18). However, the existence of a limitation on discovery is not enough to establish substantive unconscionability. See In re Cotton Yarn, 505 F.3d at 286-87 ("[Plaintiff's] burden is a substantial one and cannot be satisfied by a mere listing of the ways that the arbitration proceeding will differ from a court proceeding."); Gonzales, 497 F. Supp 3d at 854 ("There is nothing unusual or unfair about the limitation imposed here" (interpreting the same provision in the same agreement to arbitrate)).

The discovery limitations in the Arbitration Agreement limit discovery, but not to the extent that they would "preclude [Plaintiff] from effectively vindicating [her] statutory rights." In re Cotton Yarn, 505 F.3d at 286.

Plaintiff also maintains that the Arbitration Agreement is void because she asserts Defendant violated its employment contract with Plaintiff through its "failure to pay overtime wages." (Doc. No. 9 at 2, ¶ 9). Plaintiff points to no provision in her employment contract that would release her from her obligation to arbitrate even if this is true. Furthermore, under the Arbitration Agreement, Plaintiff is required to arbitrate the very claims she argues render the Arbitration Agreement void. (Doc. No. 5-2, Ex. B at 8, ¶¶ B(1) & B(3)).

### 2. Scope of the Arbitration Agreement

Defendant has asserted that the Arbitration Agreement covers the claims asserted by Plaintiff. The Arbitration Agreement provides that the Parties mutually agree to resolve "all disputes, claims, and controversies . . . related to pre-employment, employment, employment termination, or post-employment related claims, whether the claims are denominated as tort, contract, common law, or statutory claims . . . ." (Doc. No. 5-2 Ex. B ¶ B(1)). The Agreement goes on to enumerate the types of claims covered, including claims related to "unlawful termination," "failure to promote," "wage and hour-based claims including claims for unpaid wages, commission, or other compensation" and "unlawful discrimination or harassment." Id. Plaintiff's claims fit squarely within the scope of the Arbitration Agreement even construing Plaintiff's pro se Complaint liberally, as the Court must do. (Compl. Doc. No. 1 ¶ 3, ¶ 4, and at 12).

### C. Defendant's Motion to Dismiss

The Court further notes that Defendant requested dismissal upon submitting the claims to

arbitration, but the Supreme Court recently held in Smith v. Spizzirri that when a court finds that a lawsuit involves an arbitrable dispute, the court must stay and not dismiss mandatory arbitration claims because "case, text, structure, and purpose all point" to the courts not having "discretion to dismiss" mandatory arbitration claims. 144 S. Ct. at 1173. While this decision came after the parties' briefing, no party requested to file supplemental briefing and the Court finds supplemental briefing on Spizzirri is unnecessary because it would not aid the decisional process as this Court routinely issues stays when compelling arbitration under the plain language of 9 U.S.C. § 3.

Considering all of this, the Court grants Defendant's Motion to Compel Arbitration and stays this matter pending arbitration.

### III. ORDER

**IT IS, THEREFORE, ORDERED that:**

1. Defendant's "Motion to Compel Arbitration/Motion to Dismiss" (Doc. No. 5) is **GRANTED IN PART**. Specifically, Defendant's Motion to Compel Arbitration (Doc. No. 5) is **GRANTED**. The parties are **ORDERED** to submit this matter to arbitration in accordance with the Arbitration Agreement.

2. Defendant's "Motion to Dismiss" is administratively **DENIED AS MOOT**.

3. This matter is **STAYED** pending the outcome of the parties' binding arbitration. See 9 U.S.C. § 3. It is further **ORDERED** that the parties shall file a status report within 90 days of this Order, and each 90 days thereafter, until the conclusion of the arbitration.

4. The Clerk shall send copies of this Order to the parties' counsel and to the Honorable Frank D. Whitney.

**SO ORDERED.**

Signed: September 25, 2024

Susan C. Rodriguez
United States Magistrate Judge